# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:15-cv-10993 |
| | ) |
| Universal Rehab Services, Inc., | ) Hon. Judge |
| PhysioFlex, PLLC, | ) Victoria A. Roberts |
| Ahmad T. Abulabon, P.T., | ) |
| Summit Medical Group, PLLC, and | ) Magistrate Judge |
| David Jankowski, D.O., | ) Anthony P. Patti |
| Defendants. | ) |

## STATE FARM MUTUAL'S MOTION
## TO DISMISS DEFENDANTS' COUNTERCLAIMS [Dkt. 116]

Plaintiff/Counter-Defendant State Farm Mutual Automobile Insurance Company ("SFMAIC"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Court's Order dated September 21, 2016 [Dkt. 121], moves to dismiss the Counterclaims [Dkt. 116] filed by defendants Universal Rehab Services, Inc., PhysioFlex, PLLC, and Ahmed T. Abulabon, P.T. (collectively "Defendants") for the reasons set forth in the attached Brief.

Counsel for SFMAIC contacted opposing counsel and sought, but did not obtain, concurrence in the relief sought.

WHEREFORE, Counter-Defendant SFMAIC respectfully requests that this Court dismiss Defendants' Counterclaims [Dkt. 116].

Dated:  October 10, 2016          Respectfully submitted,

By:   /s/ Kathy P. Josephson
Ross O. Silverman
Kathy P. Josephson
Andrew D. Welker
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL  60661-3693
(312) 902-5200
ross.silverman@kattenlaw.com
kathy.josephson@kattenlaw.com
andrew.welker@kattenlaw.com

Thomas W. Cranmer (P25252)
Miller, Canfield, Paddock and Stone, PLC
840 W. Long Lake Road, Suite 200
Troy, Michigan  48098
(248) 267-3381
cranmer@millercanfield.com

*Attorneys for Plaintiff SFMAIC*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:15-cv-10993 |
| ) | |
| Universal Rehab Services, Inc., ) | Hon. Judge |
| PhysioFlex, PLLC, ) | Victoria A. Roberts |
| Ahmad T. Abulabon, P.T., ) | |
| Summit Medical Group, PLLC, and ) | Magistrate Judge |
| David Jankowski, D.O., ) | Anthony P. Patti |
| Defendants. ) | |

## STATE FARM MUTUAL'S BRIEF IN SUPPORT OF THE
## MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS [Dkt. 116]

## STATEMENT OF ISSUES PRESENTED

1.     Should Defendants' Counterclaims should be dismissed because Defendants did not obtain leave from the Court to file their counterclaims?

2.     Should Defendants' Counterclaim for abuse of process be dismissed because it fails to allege elements required under Michigan law, including the following:  (a) an improper act; (b) an ulterior purpose for the improper act that is more than simply retaliatory; and (c) damages?

3.     Should Defendants' Counterclaim for tortious interference with contractual relations be dismissed because it fails to allege elements required under Michigan law, including the following: (a) the existence of any contract; (2) the breach of any contract; and (3) unjustifiable interference by SFMAIC with any such contract?

4.     Should Defendants' Counterclaim for breach of settlement agreements based on SFMAIC's filing of this lawsuit be dismissed because, based on the express terms of the settlement agreements, no such breach occurred?

5.     Should Defendants' Counterclaim for fraudulent misrepresentation be dismissed because it fails to allege: (a) a breach of duty separate and distinct from SFMAIC's contractual obligation to pay no-fault benefits; (b) fraud with sufficient particularity to satisfy Fed. R. Civ. P. 9(b)?

### STATEMENT OF MOST CONTROLLING AUTHORITIES

*Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings, Inc.*, 2011 WL 2261298 (D. Minn. Mar. 21, 2011)

*Elite Entm't, Inc. v. Khela Bros. Entm't*, 227 F.R.D. 444 (E.D. Va. 2005)

*Prof'l Real Estate Inv'r, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56–57 (1993)

*Early Detection Ctr., PC v. N.Y. Life Ins. Co.*, 157 Mich. App. 618 (1986)

*Thill v. Ocwen Loan Servicing, LLC*, 8 F. Supp. 3d 950 (E.D. Mich. 2014)

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2013 WL 509284 (E.D. Mich. Jan. 12, 2013)

*Forbes v. Ilitch*, 1997 WL 33353844 (Mich. Ct. App. Jan. 31, 1997)

*L&W Servs., Inc. v. Campbell Aviation, Inc.*, 2001 WL 716933 (Mich. Ct. App. Mar. 13, 2001) (per curiam)

*Brock v. Consol. Biomed. Labs.*, 817 F.2d 24 (6th Cir. 1987)

*State Farm Mut. Auto. Ins. Co. v. Radden*, 2016 WL 695598 (E.D. Mich. Feb. 22, 2016)

MCL § 500.3145(1)

Fed. R. Civ. P. 15(a)

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 9(b)

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...........................................................................1

II.   RELEVANT BACKGROUND ........................................................2

    A.   Defendants Ignore Federal Rules And Judge Roberts's
        Scheduling Order, Filing Untimely Counterclaims Without
        Leave Of Court. ....................................................................2

    B.   Defendants' Allegations Regarding SFMAIC's Purportedly
        Abusive Discovery Conduct Have Been Rejected By The
        Court. ....................................................................................6

III.  LEGAL ANALYSIS ......................................................................7

    A.   The Untimely Counterclaims Should Be Struck For Failure To
        Obtain Leave Of Court And Because Delay Is Unduly
        Prejudicial. ............................................................................7

    B.   Defendants' Counterclaims Fail To State A Claim For Relief. ...........9

    C.   Defendants Fail To Allege An Actionable Abuse Of Process. ...........10

    D.   Claim For Tortious Interference With Contract Is Fatally
        Flawed. ...............................................................................15

    E.   Claim For Breach Of Settlement Agreements Must Be
        Dismissed. ...........................................................................18

    F.   Defendants Cannot State A Claim For Fraud. ...................................20

    G.   Claim For Unpaid PIP Benefits Should Be Dismissed Or
        Limited. ...............................................................................23

IV.   CONCLUSION .............................................................................25

iv

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Mech. Servs., Inc. v. Local 337 of United Ass'n of Journeymen
 & Apprentices of Plumbing & Pipefitting Indus.*,
 2000 WL 924594 (6th Cir. June 26, 2000) .......................................................20

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2008) .........................................................................................9

*Battah v. Resmae Mortg. Corp.*,
 746 F. Supp. 2d 869 (E.D. Mich. 2010) .............................................................24

*Bern Unlimited, Inc. v. Burton Corp.*,
 25 F. Supp. 3d 170 (D. Mass. 2014) ................................................................7, 8

*Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*,
 32 F. Supp. 3d 824 (E.D. Mich. 2014) ...............................................................22

*Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings, Inc.*,
 2011 WL 2261298 (D. Minn. Mar. 21, 2011) ..................................................7, 8

*Bundy v. Fed. Nat'l Mortg. Ass'n*,
 2011 WL 977531 (E.D. Mich. Feb. 25, 2011) ..............................................24, 25

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
 404 U.S. 508 (1972) ............................................................................................17

*Casey v. Auto Owners Ins. Co.*,
 273 Mich. App. 388 (2007) .................................................................................25

*Collins v. CitiMortgage, Inc.*,
 974 F. Supp. 2d 1034 (E.D. Mich. 2013) ...........................................................18

*Cooper v. Auto Club Ins. Ass'n*,
 481 Mich. 399 (2008) ..........................................................................................22

*Cruz v. State Farm Mut. Auto. Ins. Co.*,
 241 Mich. App. 159 (2000) .................................................................................25

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Humana Ins. Co.*,
2012 WL 473133 (N.D. Ill. Feb. 8, 2012) ......................................................16

*Curran v. City of Dearborn*,
957 F. Supp. 2d 877 (E.D. Mich. 2013) .........................................................10

*Dalley v. Dykema Gossett*,
287 Mich. App. 296 (2010) ......................................................................11, 18

*Digital Ally, Inc. v. DragonEye Tech., LLC*,
2014 WL 2865592 (D. Kan. June 24, 2014) ..................................................7, 8

*Early Detection Ctr., PC v. N.Y. Life Ins. Co.*,
157 Mich. App. 618 (1987) ............................................................................14

*Eid v. Saint-Gobain Abrasives, Inc.*,
377 F. App'x 438 (6th Cir. 2010) ...................................................................19

*Ellison v. JP Morgan Chase Bank*,
2013 WL 5913432 (E.D. Mich. Oct. 31, 2013) ...............................................10

*Estella v. Bristol Hosp.*,
2015 WL 5134798 (Conn. Super. Ct. Jul. 31, 2015) ......................................16

*Farm Bureau Mut. Ins. Co. v. Knipple*,
2000 WL 33421298 (Mich. Ct. App. May 12, 2000) .......................................25

*Feldman v. Green*,
138 Mich. App. 360 (1984) ............................................................................17

*Flores v. Emerich & Fike*,
2008 WL 2489900 (E.D. Cal. June 18, 2008) .................................................12

*Forbes v. Ilitch*,
1997 WL 33353844 (Mich. Ct. App. Jan. 31, 1997) .......................................16

*Foremost Promotions, Inc. v. Pabst Brewing Co.*,
15 F.R.D. 128 (N.D. Ill. 1953)........................................................................11

*Friedman v. Dozorc*,
412 Mich. 1 (1981) .........................................................................................10

*Glass v. Van Lokeren*,
   2014 WL 1233704 (Mich. Ct. App. Mar. 25, 2014)...........................................17

*GMA Cover Corp. v. Saab Barracuda, LLC*,
   2012 WL 642739 (E.D. Mich. Feb. 8, 2012).....................................................17

*Hensley Mfg. v. ProPride, Inc.*,
   579 F.3d 603 (6th Cir. 2009) ...............................................................................9

*Horacek v. Neph*,
   466 F. App'x 508 (6th Cir. 2012) ......................................................................14

*Ioppolo v. Rumana*,
   2011 WL 3568863 (M.D. La. Aug. 15, 2011)....................................................13

*Keys v. Cent. Mortg. Co.*,
   2014 WL 5511510 (E.D. Mich. Oct. 31, 2014)..................................................14

*L&W Servs., Inc. v. Campbell Aviation, Inc.*,
   2001 WL 716933 (Mich. Ct. App. Mar. 13, 2001)............................................18

*Larobina v. McDonald*,
   274 Conn. 394 (2005) ........................................................................................13

*Lonchar v. Thomas*,
   517 U.S. 314 (1996).............................................................................................11

*Mahrle v. Danke*,
   216 Mich. App. 343 (1996) ................................................................................15

*McKinney v. Misico Inv., LLC*,
   2011 WL 5244956 (E.D. Mich. Nov. 3, 2011)............................................23, 24

*Morris v. Ambassador Nursing Home, Inc.*,
   845 F. Supp. 1164 (E.D. Mich. 1994) ................................................................16

*PPG Indus., Inc. v. Payne*,
   2012 WL 1836314 (E.D. Tenn. May 21, 2012) .................................................12

*Patrick v. Wal-Mart, Inc. - Store No. 155*,
   2012 WL 1739143 (5th Cir. May 17, 2012)......................................................24

*Pennwalt Corp. v. Zenith Labs., Inc.*,
  472 F. Supp. 413 (E.D. Mich. 1979) .................................................................11

*Prof'l Real Estate Inv'r, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993).........................................................................................11

*Romero v. Buhimschi*,
  2010 WL 3724595 (6th Cir. 2010) ..............................................................9, 10

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
  2013 WL 509284 (E.D. Mich. Jan. 12, 2013) ..................................................16

*State Farm Mut. Auto. Ins. Co. v. Radden*,
  2016 WL 695598 (E.D. Mich. Feb. 22, 2016)......................................21, 22, 23

*Sutor v. Intex Recreation Corp.*,
  2014 WL 5439302 (M.D. Fla. Oct. 24, 2014) ....................................................9

*Thill v. Ocwen Loan Servicing, LLC*,
  8 F. Supp. 3d 950, 955 (E.D. Mich. 2014) ................................................15, 16

*Thompson v. Bank of Am., NA*,
  773 F.3d 741 (6th Cir. 2014) ...........................................................................15

*Three Lakes Ass'n v. Whiting*,
  75 Mich. App. 564 (1977) ...........................................................................10, 14

*U.S. ex rel. Marlar v. BWXT Y-12, LLC*,
  525 F.3d 439 (6th Cir. 2008) ...........................................................................22

*Van Emon v. State Farm Mut. Auto. Ins. Co.*,
  2008 WL 3539480 (E.D. Mich. Aug. 11, 2008).................................................21

*Weiner v. Klais & Co., Inc.*,
  108 F.3d 86 (6th Cir. 1997), overruled on other grounds by
  *Swierkiwica v. Sorema, NA*, 534 U.S. 506 (2002)..............................................20

*Westfield Ins. Co. v. Mitchell*,
  2013 WL 4742832 (S.D. W. Va. Sept. 3, 2013)................................................12

*Westmac, Inc. v. Smith*,
  797 F.2d 313 (6th Cir. 1986) ...........................................................................11

**Statutes**

18 U.S.C. § 1962 ..................................................................................................2

MCL § 500.3101, *et seq.* .......................................................................................25

MCL § 500.3145 ..................................................................................................21

**Rules**

Fed. R. Civ. P. 8(a) .........................................................................................23, 24

Fed. R. Civ. P. 9(b) ...............................................................................................22

Fed. R. Civ. P. 11(b) ...............................................................................................3

Fed. R. Civ. P. 12(b)(6) ...........................................................................................9

Fed. R. Civ. P. 15 ................................................................................................7, 8

Fed. R. Civ. P. 26 ..................................................................................................12

Fed. R. Civ. P. 34 ..................................................................................................12

## I.     INTRODUCTION

Over two months after the deadline to amend pleadings expired and without leave of Court, Defendants filed baseless and retaliatory Counterclaims ("Counterclaims" or "CC") for:  (1) abuse of process; (2) tortious interference with contractual relations;  (3)  breach  of  settlement  agreements;  (4)  fraudulent misrepresentation; and (5) unpaid personal-injury-protection ("PIP") benefits.  The Counterclaims  are  untimely  and  should  be  stricken  for  this  reason  alone. Moreover, each count fails to state a claim.  The abuse-of-process and tortious-interference claims are improperly based on the filing of this lawsuit and theories that were expressly rejected by the Court in the September 26, 2016 Order denying Defendants' Motion to Compel [Dkt. 122], namely that SFMAIC produced disorganized documents, and violated HIPAA by producing personal health information ("PHI").  With respect to the tortious-interference claim, Defendants fail to allege a contract, a breach, or tortious conduct by SMAIC that caused the breach.  Defendants' claim that SFMAIC breached settlement agreements by filing this lawsuit is belied by the express language of the settlement agreements themselves.  Their untimely fraud claim lacks the requisite specificity.  Finally, Defendants' claim for unpaid PIP benefits should be dismissed because it fails to identify the bills SFMAIC allegedly refused to pay, and is barred by the one-year-

back rule.  Requests for exemplary damages in their contract claims should also be stricken.

## II.   RELEVANT BACKGROUND

### A.   Defendants Ignore Federal Rules And Judge Roberts's Scheduling Order, Filing Untimely Counterclaims Without Leave Of Court.

On March 16, 2015, SFMAIC filed its Complaint, alleging claims under 18 U.S.C. § 1962(c) and (d), as well as claims for fraud and unjust enrichment.  Dkt. 1  On October 15, 2015, the Court denied the motions to dismiss the Complaint.  Dkt. 38.  Five days later, on October 20, 2015, the Court entered a Scheduling Order which, in relevant part, set a May 11, 2016 deadline to amend pleadings.  Dkt. 39.  On May 6, 2016, Defendants filed a Motion for Leave to File Counterclaim, attaching as Exhibit 2 a proposed Counterclaim that purported to allege claims for: (1) unpaid PIP benefits; (2) breach of settlement agreements; (3) fraudulent misrepresentation; (4) abuse of process; and (5) tortious interference with contractual relations.  Dkt. 78.  On May 11, 2011, SFMAIC filed a Motion for Leave to File Amended Complaint, explaining that the proposed Amended Complaint was substantially the same as the Complaint, except that it: (1) added nine new patients; (2) removed eight patients whose bills were resolved through state-court cases and two duplicates; (3) moved 13 patients from the PT Enterprise to the Summit/PT Enterprise; (4) described the relationship between the Summit

2

and Summit Physicians Group ("SPG"); and (5) revised the damages allegations. Dkt. 85.

On June 16, 2016, SFMAIC sent Defendants a letter, attached as Exhibit 1, notifying them that their Counterclaim falsely accused SFMAIC and its attorneys of fraudulently manufacturing a release intended to resolve a state-court case that Physioflex filed against SFMAIC, forging Abulabon's signature and producing the purportedly forged document in this case to defraud Defendants.   SFMAIC explained that even a minimal amount of due diligence would have revealed that Defendants had no good-faith basis to make these false, defamatory and sanctionable allegations against SFMAIC and its attorneys.  *Id*. (citing Fed. R. Civ. P. 11(b)).   SFMAIC demanded that Defendants immediately remove the false allegations from the docket.  *Id*.   In response, on June 22, 2016, Defendants withdrew their Motion for Leave to File Counterclaim.  Dkt. 105.

On June 28, 2016, the parties appeared in Court for a discovery conference and motion hearing on pending motions, including SFMAIC's Motion for Leave. The Court confirmed on the record that Defendants had withdrawn their Motion for Leave to File Counterclaim.  *See* Ex. 2.  The next day, the Court entered an Order withdrawing Defendants' Motion and granting SFMAIC leave to file the Amended Complaint.  Dkt. 106.  On July 8, 2016, SFMAIC filed its Amended Complaint.  Dkt. 107.  On July 22, 2016, Defendants responded to the Amended

3

Complaint with an Answer, Affirmative Defenses, **and Counterclaim**.  Dkt. 116.
The Counterclaim is almost identical to the pleading Defendants initially asked to
file, except they removed the false and defamatory allegations about SFMAIC and
its counsel.  Although it was filed in response to SFMAIC's Amended Complaint,
it does not address the specific, minimal amendments that SFMAIC made.

Rather, Defendants purport to allege the same causes of action, based on
virtually identical allegations, as their May 6, 2016 version, filed **before** SFMAIC
filed its proposed Amended Complaint.  Specifically, Defendants allege that "[t]his
lawsuit has no basis in actual fact," "fails to pass muster under FRCP 11[]," and is
"presented  . . . to harass . . . [or] needlessly increase the cost of litigation."  Dkt.
116 at 34, 39.  According to Defendants, SFMAIC filed this lawsuit to "retaliat[e]
against Abulabon for his refusal to assist [SFMAIC] in the identification and
prosecution of insurance fraud."  *Id*. at 35; *id.* at 52 ("unlawful motive behind
[SFMAIC's] frivolous lawsuit and its desire to bankrupt the . . . Defendants is
Abulabon's refusal, in 2012, to assist [SFMAIC] in investigating and identifying
insurance fraud").  They further allege that "[SFMAIC's] filing and maintenance
of the instant litigation constitutes a breach of [state court settlement agreements],
which were executed prior to or during the pendency of this action" and "is the
result of [SFMAIC's] abuse of the power entrusted to it by [this Court] and is
additional evidence that [SFMAIC] brought this litigation for an improper

4

purpose." *Id*. at 42–43.  Defendants also claim that "to induce providers . . . to continue to treat [SFMAIC's] insureds and wait to file a lawsuit for nonpayment until the limitations period has expired, [SFMAIC] issues fraudulent letters misrepresenting that [SFMAIC] is investigating the claim . . . ." *Id*. at 44.

Defendants then accuse SFMAIC of abusing discovery procedures in this case by "us[ing] its document production . . . in a manner that is not proper." *Id*. at 48.  Defendants make the same arguments that the Court rejected in denying their Motion to Compel, that: (1) "[SFMAIC's] documents are a mess of thousands of irrelevant documents," and (2) "[SFMAIC] failed to review its production to ensure that its production of PHI was limited to 'the minimum necessary to accomplish the intended purpose'" in violation of HIPAA "to cause . . . Defendants needlessly to expend substantial resources." *Id*. at 49–51; *id.* at 51 (SFMAIC's "document dump . . . is an abuse of an actual litigation procedure during the course of this lawsuit").  Defendants also assert that SFMAIC abused the processes of this Court by inadvertently contacting their current employee, despite that she was not identified in Defendants' sworn interrogatory answers.[1]

---

[1] Moreover, as set forth in the email exchange attached as Exhibit 3, no substantive discussion took place between counsel for SFMAIC and Inayeh Bazzi, and when Defendants advised SFMAIC that Ms. Bazzi is a current employee, SFMAIC described the limited conversation that took place, confirmed that it would have no further contact with Ms. Bazzi, and requested that Defendants immediately amend their sworn interrogatory answers to identify all current and past employees, along with their status.

Defendants' request for compensatory and exemplary damages is based on SFMAIC's alleged: (1) "reckless disregard for the obligations it has as a custodian of vast amounts of [PHI] and other sensitive and confidential information," (2) "initial and continued pursuit of the instant and frivolous litigation," and (3) "wanton and willful abuse of the processes of this Court."  *Id.* at 35, 62.

### B. Defendants' Allegations Regarding SFMAIC's Purportedly Abusive Discovery Conduct Have Been Rejected By The Court.

On May 17, 2016, shortly after seeking leave to file their original proposed Counterclaims, Defendants filed a Motion to Compel Answers to Interrogatories and Production/Identification of Responsive Documents, advancing the same arguments about SFMAIC's discovery practices that they alleged in both versions of their Counterclaims.  Dkt. 89.  On September 26, 2016, the Court denied Defendants' Motion in its entirety.  Dkt. 122.  In doing so, the Court denied their request to compel SFMAIC to identify responsive documents more specifically and to exclude allegedly nonresponsive or irrelevant documents, holding that "[t]he Court agrees with State Farm that it has no further duty to sort or organize the documents."  *Id.* at 3–4.  Additionally, the Court held that "State Farm's document production has not unlawfully violated HIPAA."  *Id.* at 7.  Specifically, "[t]here is an exception for judicial proceedings, the parties have a stipulated protective order in place, and these documents have been labeled 'confidential' pursuant to the protective order which specifically references these types of documents."  *Id.*  In

light of the Court's Order, Defendants' allegations regarding SFMAIC's discovery

conduct cannot support their Counterclaims.

## III.  LEGAL ANALYSIS

### A.  The Untimely Counterclaims Should Be Struck For Failure To Obtain Leave Of Court And Because Delay Is Unduly Prejudicial.

A counterclaim filed after an amended complaint is a "pleading" governed

by Rule 15(a)(2), which requires "the court's leave," or the opponent's consent,

before filing.  *See Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170, 179

(D. Mass. 2014) (applying "Rule 15 standard equally to amended complaints and

amended (or new) counterclaims," and striking counterclaims); *see also Digital*

*Ally, Inc. v. DragonEye Tech., LLC*, 2014 WL 2865592, at *3–4 (D. Kan. June 24,

2014); *Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings, Inc.*, 2011 WL

2261298, at *6 (D. Minn. Mar. 21, 2011) (improper to assert new counterclaim

without leave of court).  Allowing defendant "to assert entirely new counterclaims,

at its option, whenever the complaint has been amended would mean that claims

that would otherwise be barred or precluded could be revived without cause."

*Bern*, 25 F. Supp. 3d at 179.  It would "create an imbalanced, if not inequitable,

situation where the plaintiff would be required to obtain leave to make

amendments to its pleadings, but the defendant-counterclaimant would not."  *Id.*

The Counterclaims should be dismissed with prejudice because Defendants

filed them late, after the Court-ordered May 11, 2016 deadline to amend pleadings,

7

and intentionally failed to seek leave from the Court. As set forth above, Defendants intended to seek leave to file Counterclaims for the first time before the deadline [Dkt. 78] but withdrew their motion, *see* Ex. 2, because the proposed Counterclaims contained false and defamatory allegations against SFMAIC [Dkt. 105]. Instead of disclosing their sanctionable conduct and intent to refile to the Court at the June 28, 2016 hearing, Defendants attempted an end-run around the Court's Scheduling Order and Rule 15(a), filing Counterclaims without consent or leave of Court on July 22, 2016, three weeks after the hearing and more than two months after the deadline to amend. Dkt. 116 at 33–63. Defendants' pleading approach is not permissible. *See Bern*, 25 F. Supp. 3d at 179; *Digital Ally*, 2014 WL 2865592, at *3–4; *Buffalo Wild Wings*, 2011 WL 2261298, at *6.[2]

Defendants' delay also prejudices SFMAIC. This case was filed in March 2015. As the Court knows, in August 2016, just weeks after the Counterclaims were filed, the parties agreed to stay discovery pending facilitation scheduled for September 12, 2016, which was unsuccessful. On September 19, 2016, the Court

---

[2] Nor can Defendants argue that their Counterclaims were responsive to SFMAIC's amendments. Indeed, although Defendants' Counterclaims were not filed until after SFMAIC filed its Amended Complaint, Defendants filed their now-withdrawn Motion for Leave to File Counterclaims, attaching virtually identical Counterclaims to those that they have now filed, **before** SFMAIC filed its own Motion for Leave to File Amended Complaint, which attached the proposed Amended Complaint. Moreover, SFMAIC's Amended Complaint is substantially the same as the original Complaint. SFMAIC did not add parties or causes of action, nor did SFMAIC add or change any theory of liability or damages. Indeed, the only changes the Amended Complaint makes is to update the Complaint's appendices, revise SFMAIC's actual damages, and add certain factual allegations describing the relationship between the Summit Defendants and a related entity, none of which expands the scope or theory of SFMAIC's case.

agreed to extend fact discovery until December 16, 2016, which would leave SFMAIC with insufficient time—less than three months—to conduct discovery on the Counterclaim's five new causes of action. *See Sutor v. Intex Recreation Corp.*, 2014 WL 5439302, at *2–3 (M.D. Fla. Oct. 24, 2014) (denying motion for leave to amend complaint where "discovery deadline [was] less than three months away," "addition of punitive damages claim would widen the scope of litigation" and plaintiff "failed to establish the requisite good cause"). Defendants could have sought leave to file Counterclaims before the Court-ordered deadline but failed to do so. Because Defendants' tactics and delay are both procedurally improper and prejudicial to SFMAIC, their Counterclaims should be dismissed with prejudice.

### B.   Defendants' Counterclaims Fail To State A Claim For Relief.

To survive a Rule 12(b)(6) motion, a counter-claimant must plead more than labels and conclusions or a formulaic recitation of the elements of a claim. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the claim must allege facts that, if accepted as true, raise a right to relief above the speculative level, and state a claim that is plausible on its face. *See Romero v. Buhimschi*, 2010 WL 3724595, at *4 (6th Cir. 2010); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2008)). "A claim has facial plausibility only when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Romero*, 2010 WL 3724595, at *4.

### C. Defendants Fail To Allege An Actionable Abuse Of Process.

Defendants' abuse-of-process claim, based on SFMAIC's allegedly improper initiation of this lawsuit, "wrongful use of its document production," and inadvertent *de minimis* contact with a current Physioflex employee, is fatally flawed and must be dismissed. Dkt. 116 at 60 ¶¶ 120–22. "The tort of abuse of process is not favored in Michigan." *Ellison v. JP Morgan Chase Bank*, 2013 WL 5913432, at *11 (E.D. Mich. Oct. 31, 2013). To state a claim, a plaintiff must allege: (1) an act in the use of process that is improper in the regular prosecution of the proceeding; (2) an ulterior purpose; and (3) actual damages. *See Curran v. City of Dearborn*, 957 F. Supp. 2d 877, 887 (E.D. Mich. 2013) (citing *Friedman v. Dozorc*, 412 Mich. 1, 30 (1981); *Three Lakes Ass'n v. Whiting*, 75 Mich. App. 564, 575 (1977)). The Counterclaim fails to satisfy these three requirements.

First, Defendants do not allege an act in the use of process that is improper in the regular prosecution of the proceeding. The three predicate acts for Defendants' abuse-of-process claim are that SFMAIC: (1) "brought this lawsuit for the ulterior and covert purpose of bankrupting the . . . Defendants and of carrying out the final step in its retaliatory scheme against Abulabon"; (2) wrongfully produced documents to cause Defendants "to waste substantial

10

resources" reviewing documents and which improperly contain PHI in violation of federal law; and (3) "unlawfully attempted to obtain discovery from . . . Defendants' Alternative Administrator."  Dkt. 116 at 60 ¶¶ 120–22.  None of the alleged acts can support an abuse-of-process claim.

As to their allegation that SFMAIC filed the lawsuit for an improper purpose, filing a complaint, even with malice, cannot support their claim.  *See Dalley v. Dykema Gossett*, 287 Mich. App. 296, 322 (2010).[3]  An abuse-of-process claim "must allege more than the mere issuance of process," since "an action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue."  *Id*.  Moreover, such a claim is barred by the *Noerr-Pennington* doctrine, which recognizes that filing a lawsuit is constitutionally protected activity under the First Amendment.  *See Prof'l Real Estate Inv'r, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56-57 (1993); *Westmac, Inc. v. Smith*, 797 F.2d 313, 315 (6th Cir. 1986).[4]

---

[3] As the Supreme Court has explained, "courts will not look behind an action that states a valid legal claim on its face in order to try to determine the comparative weight a litigant places on various subjective reasons for bringing the claim." *Lonchar v. Thomas*, 517 U.S. 314, 332 (1996).  "A valid . . . action . . . does not suddenly become invalid simply because the litigant is subjectively indifferent about receiving the requested . . . relief, but instead primarily wants to . . . obtain revenge." *Id*.  This is because "it is difficult to see how an inquiry into the circumstances surrounding the instigation of the action could affect the substance of the claim." *Foremost Promotions, Inc. v. Pabst Brewing Co*., 15 F.R.D. 128, 130 (N.D. Ill. 1953).

[4] *See also Pennwalt Corp. v. Zenith Labs., Inc.*, 472 F. Supp. 413, 424 (E.D. Mich. 1979) (abuse-of-process claim based on complaint filing was barred under *Noerr-Pennington*).

Defendants also allege that SFMAIC's document production was an abuse of process. As a preliminary matter, the Court has already rejected Defendants' arguments, holding that SFMAIC's document production was proper and did not violate HIPAA. Dkt. 122. In any event, SFMAIC's document production pursuant to Rules 34 and 26 is not conduct that can support an abuse-of-process claim. *See PPG Indus., Inc. v. Payne*, 2012 WL 1836314, at *11 (E.D. Tenn. May 21, 2012) (concluding that a "document dump[,]" among other issues attendant to "contentious litigation[,]" did not constitute an abuse of process). Rather, disputes regarding document productions are properly resolved through discovery motions. *See Westfield Ins. Co. v. Mitchell*, 2013 WL 4742832, at *5 (S.D. W. Va. Sept. 3, 2013) (alleged intentional failure to produce documents under Rule 26(a)(1) would "not be sufficient to support an abuse of process claim . . . . because at most" it would "suggest a violation of civil discovery rules"); *Flores v. Emerich & Fike*, 2008 WL 2489900, at *13 (E.D. Cal. June 18, 2008) (attempt to use documents at trial that were not produced in discovery and alleged destruction of evidence were not an abuse of process because they were "matters [that] are inherently part of the discovery process and were redressible under discovery rules").

Nor can the inadvertent and *de minimis*[5] telephone contact by SFMAIC's counsel with one of Defendants' current employees support their abuse-of-process

---

[5] *See* Ex. 3 (describing brief conversation between Ms. Bazzi and counsel for SFMAIC).

claim.  Specifically, a telephone call does not constitute the use of process and cannot support an abuse-of-process claim.  *See, e.g.*, *Larobina v. McDonald*, 274 Conn. 394, 408 (2005) (acts that do "not involve a judicial procedure . . . as a matter of law, do not support an abuse of process claim"); *Ioppolo v. Rumana*, 2011 WL 3568863, at *5–6 (M.D. La. Aug. 15, 2011) (dismissing abuse-of-process claim because conduct was not "legal process or court process").  Moreover, Defendants admit that this conduct was a direct result of their own failure to fulfill discovery obligations by omitting Ms. Bazzi as a current employee in their sworn interrogatory answers.  Dkt. 116 ¶¶ 71–72.  Once informed that Ms. Bazzi was a current employee, SFMAIC's counsel immediately agreed to "have no further contact" with her, explaining that "[w]e did not know that [the employee] is a current employee of PhysioFlex.  She is not identified in your clients' sworn interrogatory answers, and it was our understanding that she no longer worked for your clients."  Ex. 3.  Thus, none of the alleged conduct supports their claim.

Second, Defendants have not alleged, as they must, the existence of an actionable "ulterior purpose."  Indeed, they allege no ulterior purpose at all for contacting Ms. Bazzi.  They do allege that SFMAIC purportedly initiated this lawsuit and produced documents to retaliate against Abulabon by forcing Defendants to incur litigation expenses and become bankrupt.  Dkt. 116 ¶¶ 120–21.  However, the desire to put a party out of business, even with a retaliatory motive,

13

or to expose a party to "excessive litigation costs" is not an "improper purpose" that supports the claim. *See Early Detection Ctr., PC v. N.Y. Life Ins. Co.*, 157 Mich. App. 618, 629-30 (1987) ("ulterior purpose alleged must be more than harassment, defamation, exposure to excessive litigation costs, or even coercion to discontinue business"); *cf. Horacek v. Neph*, 466 F. App'x 508, 511 (6th Cir. 2012) (retaliatory motive for false testimony was insufficient to support abuse-of-process claim). Failure to allege an ulterior purpose is fatal to their claim. *See Keys v. Cent. Mortg. Co.*, 2014 WL 5511510, at *3 (E.D. Mich. Oct. 31, 2014).

Third, Defendants do not allege that they sustained any damages as a result of SFMAIC's conduct. Although Defendants allege that they incurred expenses to review SFMAIC's document production, the Court held that SFMAIC's document production was proper when it: (1) "agree[d] with [SFMAIC] that it has no further duty to sort or organize the documents" SFMAIC produced; and (2) rejected Defendants' contention that they, improperly, were "forc[ed] . . . to take on additional liability as the involuntary custodian of [SFMAIC's] PHI" holding that SFMAIC's "document production has not unlawfully violated" HIPAA. Dkt. 122 at 3–4, 7. Defendants have not alleged that SFMAIC counsel's telephone call to Ms. Bazzi caused them any damages. *See Three Lakes Ass'n*, 75 Mich. App. at 575 (actual damages is an element of an abuse-of-process claim).

14

Defendants' abuse-of-process claim not only fails to state a claim, it defies common sense, and should be dismissed with prejudice.

### D.   Claim For Tortious Interference With Contract Is Fatally Flawed.

To state a claim for tortious interference with contractual relations, Defendants must plead:  (1) the existence of a contract; (2) a breach of that contract; and (3) an unjustified instigation of the breach by defendant.  *See Thill v. Ocwen Loan Servicing, LLC*, 8 F. Supp. 3d 950, 955 (E.D. Mich. 2014) (citing *Mahrle v. Danke*, 216 Mich. App. 343, 350 (1996)).  Defendants conclusorily allege that they had contracts with their patients and that SFMAIC intentionally interfered with them by making false allegations about Defendants (filing the Complaint) and abusing the processes of the Court (producing documents and inadvertently contacting Ms. Bazzi).  Dkt. 116 ¶ 130.  This claim is fatally flawed for at least three reasons.

First, Defendants do not and cannot allege the existence of ***actual contracts*** with patients.   To the contrary, they allege nothing more than a summary conclusion that Defendants had "contractual relationships with [SFMAIC's] insureds."   Dkt. 116 ¶ 129.   These allegations cannot support their tortious-interference claim because they "merely assert that . . . contract[s] exist[ed]" but do "not identify the contract[s]" that are the basis for their claim.  *Thompson v. Bank of Am., NA*, 773 F.3d 741, 754 (6th Cir. 2014) (tortious-interference claim failed

15

because no specific allegations regarding the existence of a contract).  *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2013 WL 509284, at *8 (E.D. Mich. Jan. 12, 2013) is instructive.  In that case, clinics filed a counterclaim against SFMAIC for tortious interference, alleging that SFMAIC damaged their patient relationships by denying claims.  This Court dismissed the counterclaim because the clinics did not identify "any specific relationship adversely affected."   Similarly here, Defendants' "allegations do not have the requisite factual support to satisfy Iqbal." *Id.*

Second, because Defendants do not allege that patients ***breached*** any of the unidentified contracts, the Counterclaim must be dismissed.   *See Morris v. Ambassador Nursing Home, Inc.*, 845 F. Supp. 1164, 1167 (E.D. Mich. 1994) ("breach of contract is an essential element of a tortious interference claim"); *Forbes v. Ilitch*, 1997 WL 33353844, at * 2 (Mich. Ct. App. Jan. 31, 1997) (tortious-interference claim failed because "no factual allegations identifying the alleged breach"); *Thill*, 8 F. Supp. 3d at 955 (dismissing tortious-interference claim that did "not identify the specific terms of the contract allegedly breached").[6]

---

[6] Defendants' allegations are even more deficient than those in *Forbes* and *Thill* because they do not allege ***any*** breach of contract by ***any*** of their patients.  Instead, Defendants allege only that they lost "a substantial portion of their patient base" as a result of SFMAIC's conduct.  Dkt. 116 ¶ 131.  However, patient-physician relationships are terminable at will and the loss of patients does not equate to a breach of contract by the patients.  *See, e.g.*, *Estella v. Bristol Hosp.*, 2015 WL 5134798 (Conn. Super. Ct. Jul. 31, 2015) (citing *Ctr. for Dermatology & Skin Cancer, Ltd. v. Humana Ins. Co.*, 2012 WL 473133 (N.D. Ill. Feb. 8, 2012) (doctor failed to state claim for

16

Third, Defendants have not alleged conduct by SFMAIC that supports a claim for *tortious* interference.   To sufficiently plead tortious interference, Defendants must allege that SFMAIC "did something illegal, unethical or fraudulent." *Glass v. Van Lokeren*, 2014 WL 1233704, at *7 (Mich. Ct. App. Mar. 25, 2014); *see also Feldman v. Green*, 138 Mich. App. 360, 370 (1984) (tortious-interference claim "must allege the intentional doing of a *per se* wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading [the other party's] contractual rights or business relationship"). Defendants' tortious-interference claim is based on SFMAIC's filing and is pursuit of this lawsuit.   Dkt. 116 ¶¶ 130–31 (SFMAIC "us[ed] false allegations [*i.e.*, the allegations contained in the Complaint] to disparage the . . . Defendants and [abused] the processes of this Court for the purpose of retaliation and forcing the . . . Defendants into bankruptcy,"  resulting in loss of "a substantial portion of their patient base and corresponding contracts with such patients").   Filing a lawsuit and producing documents are not tortious acts.   Filing a complaint is protected by the First Amendment.  *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972) (filing complaint is protected by the First Amendment under *Noerr-Pennington*); *GMA Cover Corp. v. Saab Barracuda, LLC*, 2012 WL 642739, at *11 (E.D. Mich. Feb. 8, 2012) (*Noerr-Pennington* barred tortious-

---

tortious interference with contract because he did not and could not allege enforceable contract with patient)).

interference claim based on filing complaint).  Moreover, the fact that SFMAIC filed and is pursuing this lawsuit, including responding to document requests and inadvertently contacting a current employee because of Defendants' false sworn interrogatory answer is not actionable as tortious interference.  *Cf. Dalley*, 287 Mich. App. at 324 (pursuit of TRO and "vindictive, groundless lawsuit" are not "illegal, unethical, or fraudulent conduct" and cannot support claim for tortious interference).  Indeed, in *L&W Servs., Inc. v. Campbell Aviation, Inc.*, 2001 WL 716933, at *1–2 (Mich. Ct. App. Mar. 13, 2001), the Michigan Court of Appeals held that filing and maintaining a lawsuit, even in bad faith, cannot support a tortious-interference claim.  The court explained that if plaintiff "wished to charge [defendant] with litigating in bad faith, various remedies were available that would properly have addressed the issue directly without having to bend the tort of tortious interference . . . to those contours."  *Id.* at *2.  Because the conduct that forms the basis of Defendants' tortious-interference claim is not actionable, their tortious-interference claim should be dismissed with prejudice.

### E.    Claim For Breach Of Settlement Agreements Must Be Dismissed.

Defendants' claim for breach of settlement agreements/releases is a claim for breach of contract, which requires:  "(1) a contract between the parties, (2) the terms of which require performance of a certain action, (3) a breach, and (4) the breach caused injury to the other party."  *Collins v. CitiMortgage, Inc.*, 974 F.

Supp. 2d 1034, 1041 (E.D. Mich. 2013). Defendants cannot state a claim against SFMAIC because the settlement agreements at issue neither require action by SFMAIC nor release Defendants from liability.[7] Nevertheless, Defendants allege that: (1) they "filed over 35 separate state court lawsuits (the "State Court Actions") against [SFMAIC] in order to secure payment . . . for the [PT] services they provided to [SFMAIC's] insureds," CC ¶ 25; (2) some "State Court Actions resulted in . . . settlement agreements," identified in ¶ 29 of the CC, *id.* ¶¶ 26, 29; (3) the parties "agreed that part of the consideration for each such settlement agreement was that the agreement would have the effect of a final resolution of the claims at issue," *id.* ¶ 30; and (4) SFMAIC "breached each of the agreements identified in ¶ 29 when it filed and/or maintained the instant lawsuit," *id.* ¶ 96. Tellingly, Defendants do not and cannot identify even one term of one contract that SFMAIC allegedly breached. This omission is fatal to their claim.[8]

---

[7] As SFMAIC has told Defendants and the Court, it is not seeking to recover as damages any amounts paid to Defendants pursuant to these settlement agreements. Defendants allege that "while [SFMAIC] has been seeking damages in this Court based on its . . . theory that every treatment/modality identified in its [Amended Complaint] is part of an unlawful scheme to defraud [SFMAIC], [SFMAIC] has meanwhile executed and made settlement payments to . . . Defendants for the exact same 'fraudulent' treatments/modalities.'" Dkt. 116 ¶ 37. Settlement of some State Court Actions is not a concession by SFMAIC that Defendants' services are proper. As the Court knows, "disputes are often settled for reasons having nothing to do with the merits of a claim." *Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438, 444 (6th Cir. 2010).

[8] Five agreements that Defendants allege SFMAIC breached are between patients and SFMAIC. *See* Exs. 5–7, 13 17. Defendants are not parties and lack standing to sue for breach of these agreements. *See Police & Fire Retirement Sys. of City of Detroit v. Watkins*, 2009 WL 3210922, at *8 (E.D. Mich. Sept. 30, 2009) (dismissing breach-of-contract claim for lack of standing). In addition, Exs. 19–22 relate to patients whose claims are no longer at issue in this case. Dkt. 85,

The language of the agreements identified in the Counterclaims must be considered on a motion to dismiss.[9]  *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (overruled on other grounds by *Swierkiwica v. Sorema, NA*, 534 U.S. 506 (2002)).   Accordingly, the highlighted agreements are Exhibits 4–22. The plain, unequivocal language of these agreements makes clear that Defendants released SFMAIC from liability on unpaid bills at issue in those State Court Cases, but SFMAIC neither released Defendants from liability nor agreed to perform any action.  *See id.*  Some agreements even state that they do not resolve the matters at issue in this case.  *See* Exs. 17–22.   SFMAIC did not make promises in these agreements that it could have breached.  The Counterclaim for breach of settlement agreements should be dismissed.[10]

### F.    Defendants Cannot State A Claim For Fraud.

In support of their fraud claim, Defendants allege that (1) SFMAIC worked with "IME doctors" and "clinics" to deny payment of claims, CC ¶ 44; (2) SFMAIC decided to deny claims before sending Defendants letters advising that it was investigating the claims, *id.* ¶¶ 46, 106, 110; and (3) these letters were

---

106, 107.  Defendants' claim as to these agreements must be dismissed.  Because Exhibits 17–22 contain confidentiality provisions, SFMAIC is requesting leave to file them under seal.

[9] The agreement referenced in Defendants' Counterclaims as "RE# 9 (D.B., 9/24/2015)" actually refers to an agreement involving RE# 79 (D.B., 10/15/2015).  The agreement referenced as "RE# 1/31 (S.W. and N.D.) refers to an agreement involving RE# 1/31 (S.W. and M.D.).  The agreement referenced as "RE# 106 (M.H., 12/5/2015) actually was executed on 12/21/15.

[10] Defendants' request for exemplary damages should be struck from this claim for the reasons set forth below in section III.G.

sent because SFMAIC decided to deny payment to induce Defendants to continue treating insureds and to prevent Defendants from filing suit until after the one-year limitations period set forth in MCL § 500.3145(1) had expired, CC ¶¶ 45, 113–14.

As a preliminary matter, Defendants' claim fails because they do not allege a breach of duty separate and distinct from a breach of contract. *Brock v. Consol. Biomedical Labs.*, 817 F.2d 24, 25 (6th Cir. 1987) (It "is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract."). Specifically, "the gravamen of their counterclaim is that SFMAIC breached its insurance contracts by not paying the No-Fault benefits they believe they were owed for services purportedly provided to State Farm's insureds." *State Farm Mut. Auto. Ins. Co. v. Radden*, 2016 WL 695598, at *2 (E.D. Mich. Feb. 22, 2016). Defendants' allegations are strikingly similar to those alleged in *Radden*, where the counterclaimants alleged that "State Farm engaged in a fraudulent scheme with doctors who perform [IMEs] and other (unidentified) co-conspirators to deny, delay, and diminish payment on claims." *Id.* at *1. Counterclaimants in *Radden* also alleged they received "letters indicating that claims were still under investigation by State Farm." *Id.* The court dismissed the counterclaim because the "main thrust of [their] fraud claim [was] that State Farm did not pay enough under the contract[, and, therefore,] the claim [was] not fraud, but a breach of contract." *Id.* at *2 (quoting *Van Emon v. State Farm Mut. Auto. Ins. Co.*, 2008

21

WL 3539480, at *4 (E.D. Mich. Aug. 11, 2008)).  While Defendants recite the

elements of fraud, they do not and cannot allege a duty separate from SFMAIC's

duty to pay No-Fault benefits.  *See Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399,

409 (2008).[11]  Thus, Defendants' fraud counterclaim should be dismissed.

In addition, Defendants do not satisfy Rule 9(b)'s heightened pleading

requirements.  *See Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824,

832 (E.D. Mich. 2014).  "The threshold test is whether the complaint places the

defendant on sufficient notice of the misrepresentation allowing the defendants to

answer, addressing in an informed way . . . plaintiff's claim of fraud."  *Id.*  To

plead fraud, Defendants "at a minimum, must allege the time, place, and content of

the alleged misrepresentation on which [Defendants] relied; the fraudulent scheme;

the fraudulent intent of [SFMAIC]; and the injury resulting from the fraud."  *U.S.*

*ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 444 (6th Cir. 2008).

In *Radden*, defendants' virtually identical fraud counterclaim lacked the

requisite specificity because defendants did not "identify a specific claim that State

Farm fraudulently denied, delayed or diminished that involved a named

accomplice, co-conspirator, doctor or vendor."  2016 WL 695598, at *2.  Here too,

Defendants allege that SFMAIC works "with a system of IME doctors and clinics"

---

[11] The Court in *Radden* relied on *Cooper*, explaining that "unlike a no-fault claim, a fraud claim does not arise from an insurer's mere omission to perform a contractual or statutory obligation, such as its failure to pay all the [No-fault] benefits to which its insureds are entitled." *Radden*, 2016 WL 695598, at *2 (quoting *Cooper*, 481 Mich. at 409).

to defraud Defendants, CC ¶ 44, but fail to name even one of those "IME doctors" or "clinics," nor do they identify one specific claim that SFMAIC purportedly fraudulently denied.[12]  As in *Radden,* the fraud Counterclaim should be dismissed.

### G. Claim For Unpaid PIP Benefits Should Be Dismissed Or Limited.

Defendants' breach-of-contract claim for unpaid PIP benefits fails to meet the pleading requirements of Rule 8(a).  To state a claim for breach of contract, Defendants must plead: (1) a contract; (2) the terms of the contract; (3) a breach by the defendant; and (4) that the breach caused plaintiff's injury.  *McKinney v. Misico Inv., LLC*, 2011 WL 5244956, at *4 (E.D. Mich. Nov. 3, 2011). Defendants fail to put SFMAIC on notice of the alleged breaches, namely the specific bills at issue.  Also, to the extent Defendants seek payment for services rendered before July 22, 2015, such claims are barred by the "one-year-back rule." Finally, Defendants' request for exemplary damages should be stricken.

---

[12] Defendants' Counterclaim diverges from *Radden*'s fraud counterclaims in one significant respect.  Specifically, Defendants attach a single document from SFMAIC that they claim is proof SFMAIC applied "unlawful processes and procedures [*i.e.*, the use of a "Project," "TIN Diversion," or "TIN Stop"] to all claims submitted by" Defendants since 2012.  CC ¶¶ 49, 108, 111.  The lone document is a 10/4/12 SFMAIC draft memo that supports none of Defendants' arguments.  CC Ex. 4.  Indeed, the only connection the draft memo has to any of Defendants' allegations is that it includes the term "TIN Diversion."  However, the document does not in any way support that a "TIN Diversion" was used "to justify a denial of [a] claim[,]" CC ¶ 47(a), or that its use is somehow unlawful.  There is nothing in the draft memo that indicates that any claims have been or will be denied, much less as a result of a fraudulent or improper practice.  To that end, this document underscores the baselessness of Defendants' fraud Counterclaim.  Indeed, Defendants purportedly received a "massive" production from SFMAIC, yet the only evidence Defendants cite (and apparently could find) in support of their fraud claim is a draft memo that provides absolutely no support for their sweeping accusations.  Defendants have not pleaded fraud with specificity.

First, Defendants must allege "some facts as to [the] breach." *McKinney*, 2011 WL 5244956, at *4. In *Patrick v. Wal-Mart, Inc. - Store No. 155*, 2012 WL 1739143, at *2 (5th Cir. May 17, 2012), plaintiff sued his worker's compensation carrier for alleged bad-faith denial of worker's compensation benefits. The court dismissed plaintiff's claims with prejudice for failure to satisfy Rule 8(a) because plaintiff did not "identify by date or amount or type of service, any of the alleged bad-faith denials and delays" at issue. *Id.* at *8; *see also Battah v. Resmae Mortg. Corp.*, 746 F. Supp. 2d 869, 876 (E.D. Mich. 2010) (dismissing breach of contract claim where plaintiff "lazily" referred to documents that supposedly provided facts to support the breach "without any supporting factual allegations"). As in *Patrick*, Defendants' breach-of-contract claim fails to "identify by date or amount or type of service, any of the alleged . . . denials and delays" that are allegedly at issue. *Patrick*, 2012 WL 1739143, at *8. Thus, the Counterclaims plead "no factual content allow[ing] [this] court to draw the reasonable inference" that SFMAIC wrongly denied claims for benefits. *Id.* In short, Defendants must allege which bills are the subject of this lawsuit with greater specificity. Because their "breach of contract count consists of nothing more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s],' it fails to state a claim." *Bundy v. Fed. Nat'l Mortg. Ass'n*, 2011 WL 977531, at * 8 (E.D. Mich. Feb. 25, 2011).

Second, this claim should be dismissed to the extent it seeks to recover PIP

24

benefits for services rendered before July 22, 2015.  A "claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced."  MCL § 500.3145.  Therefore, Defendants may not recover for any allegedly unpaid claims where the services were rendered one year prior to the date they filed their Counterclaims.  Accordingly, the Court should limit Defendants' damages in this case to only those services that were rendered after July 22, 2015.

Third, Defendants' request for exemplary damages should be struck.  Dkt. 116 ¶ 92.  The No-Fault Act, MCL § 500.3101, *et seq.*, provides the exclusive remedy for breach of a No-Fault insurance contract.  *Cruz v. State Farm Mut. Auto. Ins. Co.*, 241 Mich. App. 159, 164 (2000).  The No-Fault Act does not contain a provision entitling a claimant to collect exemplary damages.  *See Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 400 (2007) ("Punitive damages . . . are generally not recoverable in Michigan [unless] . . . expressly authorized by statute.").[13]  The request for exemplary damages should be struck.

## IV.   CONCLUSION

For all the foregoing reasons, the Counterclaims should be dismissed with prejudice.

---

[13] Moreover, "[t]he claim of 'bad-faith refusal to pay an insurance claim [is] an action that is not recognized by the courts of this state.'"  *Farm Bureau Mut. Ins. Co. v. Knipple*, 2000 WL 33421298, at *5 (Mich. Ct. App. May 12, 2000).

Dated:  October 10, 2016                    Respectfully submitted,

                                            By:   /s/ Kathy P. Josephson
                                            Ross O. Silverman
                                            Kathy P. Josephson
                                            Andrew D. Welker
                                            Katten Muchin Rosenman LLP
                                            525 West Monroe Street
                                            Chicago, IL  60661-3693
                                            (312) 902-5200
                                            ross.silverman@kattenlaw.com
                                            kathy.josephson@kattenlaw.com
                                            andrew.welker@kattenlaw.com

                                            Thomas W. Cranmer (P25252)
                                            Miller, Canfield, Paddock and Stone,
                                            PLC
                                            840 W. Long Lake Road, Suite 200
                                            Troy, Michigan 48098
                                            (248) 267-3381
                                            cranmer@millercanfield.com

                                            *Attorneys for Plaintiff SFMAIC*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 10, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.


By:  /s/ Kathy P. Josephson
       Attorney for Plaintiff