# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

                        Case No. 2:15-cv-10993

         Plaintiff,       District Judge Victoria A. Roberts

vs.                      Magistrate Judge Anthony P. Patti

UNIVERSAL REHAB SERVICES, INC.,
PHYSIOFLEX, P.L.L.C.,
SUMMIT MEDICAL GROUP, P.L.L.C.,
DAVID JANKOWSKI, D.O., and
AHMAD T. ABULABON, P.T.,

         Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING PLAINTIFF STATE FARM MUTUAL'S MOTION (DE 123) TO DISMISS THE UNIVERSAL DEFENDANTS' COUNTERCLAIMS (DE 116)

**I.**     **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT IN PART** and **DENY IN PART**

Plaintiff State Farm Mutual's motion (DE 123) to dismiss the Universal Defendants'

counterclaims (DE 116).   If the Court agrees with these recommendations, it should

also enter an order providing for a brief fact discovery period which, except as

otherwise ordered by this Court, would not open discovery generally but would only

relate to the surviving counterclaims.

## II.   REPORT:

### A.   Procedural Background

#### 1.   Plaintiff State Farm's original complaint

On March 16, 2015, Plaintiff State Farm filed this lawsuit against Defendants Universal Rehab Services, Inc., PhysioFlex, PLLC, Ahmad T. Abulabon, P.T. (collectively the "Universal Defendants"), Summit Medical Group, PLLC, and David Jankowski, D.O. (collectively the "Summit Defendants").   On October 15, 2015, the Court denied Defendants' motions to dismiss.   On October 29, 2015, the Universal Defendants filed an answer, affirmative defenses and a reliance upon jury demand; this responsive pleading did not include a counterclaim.   (DE 40.)

#### 2.   Summit Medical Group's counterclaim

On October 29, 2015, the Summit Defendants timely filed a combined answer, affirmative defenses and reliance upon jury demand.   (DE 44.)   In addition, Defendant Summit Medical Group (SMG) filed a counterclaim for (I) fraud/fraudulent misrepresentation, (II) civil conspiracy, and (III) declaratory relief. (DE 45.)

On February 23, 2016, the Court denied Plaintiff's motion to dismiss Defendant SMG's counterclaim.   (DE 65.)   A motion for reconsideration was also denied.   (DE 104.)   Thereafter, Plaintiff State Farm filed a response to SMG's

counterclaim.   (DE 113.)

### 3.   The Universal Defendants' withdrawn attempt to file a counterclaim

The scheduling order in this case contains a "Deadline to Amend" of May 11, 2016.   (DE 39 at 1.)   On May 6, 2016, the Universal Defendants filed a motion for leave to file a counterclaim.   (DE 78.)   The proposed counterclaim included counts for (i) unpaid PIP benefits; (ii) breach of settlement/release agreements; (iii) fraudulent misrepresentation; (iv) abuse of process; and (v) tortious interference with contractual relations.   (DE 78-2.)

On or about June 16, 2016, Plaintiff's attorney sent counsel for the Universal Defendants what could be loosely characterized as a "Rule 11 letter" regarding the proposed counterclaims, albeit without serving an actual motion, as required by Fed. R. Civ. P. 11(c)(2).   (DE 123-2.)   *See Ridder v. City of Springfield*, 109 F.3d 288, 294-295 (6th Cir. 1997).   On June 22, 2016, the Universal Defendants withdrew their motion.   (DE 105.)   The withdrawal of the motion – or at least the sealed version of it – was also confirmed by the Court on the record at the June 28, 2016 hearing.   (DE 123-3 at 3 (p. 19).)[1]

---

[1] On May 9, 2016, the Universal Defendants also filed a sealed motion for leave to file a counterclaim.   (DE 83.)   It was withdrawn by the Court, just after the June 28, 2016 hearing.   (DE 106.)

### 4.   Plaintiff State Farm's first amended complaint

Meanwhile, on May 11, 2016, Plaintiff State Farm filed a motion for leave to file a first amended complaint.   (DE 85.)   The Court granted that motion on June 29, 2016, noting the parties' stipulation to the amendment.   (DE 106.)

On July 8, 2016, Plaintiff State Farm filed an amended complaint in which it set forth several claims:   (I & V) common law fraud; (II & VI) violation of 18 U.S.C. § 1962(c) (RICO); (III) violation of 18 U.S.C. § 1962(d) (RICO); (IV & VII) unjust enrichment; and (VIII, IX and X) declaratory judgment.   (DE 107.)

### 5.   The Universal Defendants' initial counterclaims

The Summit Defendants filed a joint answer, jury trial demand and affirmative defenses.   (DE 115.)   The following day, on July 22, 2016, the Universal Defendants filed an answer, affirmative defenses and reliance upon jury demand, and, notwithstanding their previous withdrawal of their motion for leave to file a counterclaim, their new answer for the first time included *a counterclaim*. (DE 116; *see also* DEs 117-119.)   The various counterclaims consist of:   (I) claim for unpaid PIP benefits; (II) breach of settlement/release agreements; (III) fraudulent misrepresentation; (IV) abuse of process; and (V) tortious interference with contractual relations.   (DE 116 at 54-64.)

### B.   Instant Motion

Currently before the Court is Plaintiff State Farm's October 10, 2016 motion to dismiss the Universal Defendants' July 22, 2016 counterclaims.   (DE 123; *see also* DE 128-133.)   The Universal Defendants have filed responses, and Plaintiff has filed a reply.   (DEs 136, 138, 139.)[2]

Judge Roberts referred this motion to me for a report and recommendation. (DE 166.)   I held a hearing on February 27, 2017.

### C.    Discussion

### 1.    The Universal Defendants' July 22, 2016 filing is timely to the extent it presents both an answer to the first amended complaint and initial counterclaims.

At the outset, Plaintiff argues that that the Universal Defendants' July 22, 2016 counterclaims should be stricken from the record, because they are untimely, Defendants did not seek leave of Court, and the delay is "unduly prejudicial."   (DE 123 at 18-20.)   In contrast to their earlier pleading, the Universal Defendants' July 22, 2016 filing not only responds to the first amended complaint but also *adds new counterclaims*.

### a.    The Court's May 11, 2016 "deadline to amend" applies to *the complaint* and to *a motion to amend the complaint*.

---

[2] Although the Universal Defendants have filed two responses, the latter is an amended response and will be treated herein as superseding the original response. (DEs 136, 138.)

The parties' September 25, 2015 joint discovery plan and Rule 26(f) conference report contained a "proposed case management and scheduling order" providing that "Amendments to Pleadings and Addition of Parties Requiring Consent or Leave of Court" would occur by December 1, 2015 for Defendants and by May 11, 2016 for Plaintiff.   (DE 37 at 15.)   Nonetheless, the Court's October 20, 2015 scheduling order did not mention "pleadings" and only set one, universal "Deadline to Amend" - May 11, 2016.   (DE 39.)

Having counseled with Judge Roberts's chambers about the application of her initial scheduling order (DE 39), the undersigned is satisfied that the May 11, 2016 "Deadline to Amend" relates to the complaint and a motion to amend the complaint. Stated otherwise, this deadline does not apply to Defendants or to any of the other pleadings encompassed by Fed. R. Civ. P. 7(a).   Notably, a "counterclaim" is not listed as a pleading within Fed. R. Civ. P. 7(a).

        **b.**    **The Universal Defendants were not required to seek leave to file their July 22, 2016 original counterclaim.**

The Universal Defendants urge the Court to conclude that they were "entitled to file amended answers, including counterclaims, in response to State Farm's [first] amended complaint."   (DE 138 at 17-18, *et seq*.)   Plaintiff disagrees, specifically contending that the July 22, 2016 counterclaims "have no correlation to the scope of the Complaint's amendments."   (DE 139 at 7.)

6

Nonetheless, the Court need not resolve the scope of Plaintiff's amendments here, nor does the Court need to address whether the Universal Defendants' July 22, 2016 counterclaim relates to Plaintiff's July 8, 2016 amendments.   First, as detailed above, the May 11, 2016 deadline applies only to amendments to the complaint or to motions to amend the complaint.   Second, even though a counterclaim could be treated as independent of an answer, the Universal Defendants' initial counterclaims here were filed in conjunction with their timely filed July 22, 2016 answer; therefore, leave was not required.   *See* Fed. R. Civ. P. 15(a)(3).   For these reasons, the Court sees no reason to treat the counterclaim as untimely.

### 2.   Some of the Universal Defendants' counterclaims state a claim for relief.

Plaintiff seeks dismissal of each of the Universal Defendants' five counterclaims on the basis that they fail to state claims upon which relief may be granted and further asserting that any request for exemplary damages should be stricken.   (DE 123 at 20-36; *see also* DE 139 at 9-13, Fed. R. Civ. P. 12(b)(6).) The Universal Defendants respond that their counterclaims are not futile.   (DE 138 at 21-37.)

### a.   Count I – Claim for Unpaid PIP Benefits

The Universal Defendants contend that "the treatment provided by [them] was reasonably necessary for State Farm's insureds' care, recovery, and/or

rehabilitation."   (DE 138 at 11-12.)   "To recover for breach of contract under Michigan law, [the Universal Defendants] ha[ve] to prove: 1) the existence of a contract between [State Farm] and [the Universal Defendants], 2) the terms of the contract, 3) that [State Farm] breached the contract, and 4) that the breach caused [the Universal Defendants'] injury."   *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999).

### i.      Notice Pleading and Time-Bar Challenge

The Court should conclude that this counterclaim survives dismissal, as it states a claim upon which relief may be granted.   Fed. R. Civ. P. 12(b)(6). Namely, the counterclaim, as asserted, provides "a short and pain statement of the claim showing that the pleader is entitled to relief[,]" as required by Fed. R. Civ. P. 8(a)(2).   (*See* DE 116 at 54-56 ¶¶ 84-92.)   Plaintiff State Farm takes issue with the Universal Defendants' failure to put Plaintiff on notice of "the alleged breaches, namely the specific bills at issue."   (DE 123 at 34.)   However, as the Universal Defendants point out, their counterclaim generally alleges that "[w]ith respect to each of the patients identified by State Farm in its Complaint and AC ["Amended Complaint"], State Farm has and continues to unreasonably refuse to pay the claims submitted by the Universal Defendants for legitimate and reasonably necessary medical services – despite the fact that State Farm 'does not know what services

8

were actually performed…[,]'" (DE 116 at 40-41 ¶ 23).   (*See* DE 138 at 36.)   "A

statement in a pleading may be adopted by reference . . . in any other pleading or

motion."   Fed. R. Civ. P. 10(c).   Thus, contrary to State Farm's contention, the

Universal Defendants have put them on notice of the alleged breaches, as required

by Fed. R. Civ. P. 8.   (*See* DE 123 at 34.)

Furthermore, Plaintiff's two remaining challenges to this counterclaim

warrant limitation or clarification of the claim, rather than outright dismissal.   First,

it is true that a claimant "may not recover benefits for any portion of the loss incurred

more than 1 year before the date on which the action was commenced."   Mich.

Comp. Laws § 500.3145.   Thus, in the absence of an allegation of fraud, mutual

mistake or some other "unusual circumstance," the Court should limit the Universal

Defendants' damages "to only those services that were rendered after July 22,

2015."   (DE 123 at 36.)   *See Devillers v. Auto Club Ins. Ass'n*, 473 Mich. 562, 591,

702 N.W.2d 539, 556 (2005).   State Farm may raise the statute of limitations as an

affirmative defense to whatever portions of the contracts at issue exceed the

one-year look-back.   Fed. R. Civ. P. 12(b)(1).   However, it does not appear that *all*

of the payment obligations at issue are time-barred, a point implicitly conceded by

State Farm, which only argues that "*to the extent* [the Universal] Defendants seek

payment for services rendered before July 22, 2015, *such claims* are barred by the

'one-year-back rule.'"   (DE 123 at 34 (emphases added).)

### ii.      Exemplary Damages

The final paragraph of each of the five counterclaims alleges that "State

Farm's conduct has at all relevant times been willful, wanton, intentional, and

malicious, and therefore warrants the imposition of *exemplary* damages."   (DE 116

at 56-63 ¶¶ 92, 98, 117, 124 & 133 (emphasis added).)   Then, specifically within

the "claim for unpaid PIP benefits," the Universal Defendants allege:   "Pursuant to

MCL 500.3148(1), State Farm is liable for any and all *attorney fees* incurred by the

Universal Defendants in their efforts to obtain the unreasonably delayed and

overdue payments from State Farm."   (DE 116 at 56 ¶ 90 (emphasis added).)

Finally, the concluding prayer for relief seeks "[c]ompensatory, actual, incidental,

consequential, *exemplary* and other damages to which they are entitled[,]" and

"*[a]ttorney's fees*, costs, and pre- and post-filing interest pursuant to MCL

500.3148(1)[.]"   (DE 116 at 63-64 ¶¶ a, d (emphases added).)

However, while exemplary damages may theoretically be awarded to a

corporation, they are not available under Michigan law in breach of contract cases

involving purely commercial transactions.  *See Jackson Printing Co. v. Mitan*, 169

Mich. App. 334, 341, 425 N.W.2d 791 (1988); *Kirkland v. E.F. Hutton & Co*., Inc.,

10

564 F. Supp. 427, 445-446 (E.D. Mich. 1983); *Veselenak v. Smith*, 414 Mich. 567, 574-575, 327 N.W.2d 261 (1982); *Keewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980).   Exemplary damages are especially inappropriate in cases, like the present one, where the alleged injury is a financial one arising out of commercial dealings between the parties.   *See Keewin*, 409 Mich. at 420; *Jackson Printing*, 169 Mich. App. at 341.   This is because exemplary damages are intended to "compensate for injury to feelings . . . ."   *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 174 Mich. App. 14, 45, 436 N.W.2d 70, 86 (1989).   Furthermore, "exemplary damages will not be awarded to compensate a purely pecuniary grievance susceptible to full and definite monetary compensation," such as the one alleged by the Universal Defendants in this lawsuit.   *Jackson Printing*, 169 Mich. App. at 341.   As the Michigan Supreme Court has stated:

> [T]he purpose of exemplary damages in Michigan has not been not to punish the defendant, but to render the plaintiff whole.   When compensatory damages can make the injured party whole, this Court has denied exemplary damages.

*Hayes-Albion v. Kuberski*, 421 Mich. 170, 187, 364 N.W.2d 609 (1984) (*citing Ross v. Leggett*, 61 Mich. 445, 21 N.W. 695 (1886); *Veselenak v. Smith*, *supra*).

As clarified by their response, the Universal Defendants point to Paragraph 90 and allege that the only exemplary damages they are seeking "are attorney fees that the No-Fault Statute specifically authorizes[,]" as set forth in Mich. Comp. Laws §

500.3148(1).   (DE 138 at 37.)   Therefore, those portions of Paragraphs 92, 98, 117, 124 and 133 that seek exemplary damages should be dismissed, although the prayer for statutory attorney fees under Mich. Comp. Laws § 500.3148(1) should be permitted to go forward.   While the Universal Defendants' allegations as to damages may have been inartful, they are not futile.

### b.   Count II - Breach of Settlement/Release Agreements

The Universal Defendants' counterclaim generally describes how "State Farm's RICO lawsuit violates its numerous settlement agreements with the Universal Defendants."   (DE 116 at 41-44 ¶¶ 25-39; *see also* DE 138 at 12-13.) For example, the Universal Defendants contend that "[they] have filed over 35 separate state court lawsuits (the 'State Court Actions') against State Farm in order to secure payment from State Farm for the physical therapy services they provided to State Farm's insureds[,]" and that "[e]ach of the State Court Actions followed the same pattern, or protocol: sometime after the parties commenced discovery, State Farm would invariably agree to pay the Universal Defendants a settlement amount considerably less than the actual value of the services rendered by the Universal Defendants, thereby taking what amounts to a unilaterally imposed discount."   (DE 116 at 41 ¶¶ 25, 27.)   Then, within the specific counterclaim, these defendants allege:   "The agreements identified at ¶ 27 above constitute valid and binding

12

contracts, pursuant to which the Universal Defendants and State Farm agreed to resolve disputes over payments and services relating to the patients and services identified therein."   (DE 116 at 56 ¶ 94.)

As previously noted, "[t]o recover for breach of contract under Michigan law, [the Universal Defendants] ha[ve] to prove: 1) the existence of a contract between [State Farm] and [the Universal Defendants], 2) the terms of the contract, 3) that [State Farm] breached the contract, and 4) that the breach caused [the Universal Defendants'] injury."   *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999).   The Court should dismiss Count II for failure to state a claim upon which relief may be granted.

Most importantly, the Universal Defendants have not alleged that State Farm breached any duty it had under state court settlement agreements, nor have they identified a contractual duty that State Farm had to refrain from bringing the instant lawsuit, such as a covenant not to sue or an express release.   Rather, the settlement agreements only obligated State Farm to pay a certain amount for particular insurance claims.   (*See*, *e.g.*, DE 123-5, 123-15.)   Also, some of them contain merger clauses, stating that they reflect "the ENTIRE AGREEMENT between the parties . . . ."   (*Id.*)   The Universal Defendants do not allege a failure to pay and admitted at oral argument that this duty was in fact satisfied.   (DE 193 at 66, 71.)

13

Yet, they contend that "State Farm now seeks to revoke that consideration by adding those claims to this very law suit and recover the same consideration it paid to settle the state court lawsuits[,]" and that "State Farm is now breaching that agreement by seeking to recover the selfsame payments it made to the Universal Defendants to settle those suits."   (DE 138 at 26.)

In response, Plaintiff State Farm points out that the settlement agreements at issue do not "release Defendants from liability[,]" and elaborate that it "is not seeking to recover as damages any amounts paid to Defendants pursuant to these settlement agreements[,]" a comment its counsel echoed during the February 27, 2017 oral argument.   (DE 123 at 30, DE 123 at 30 n.7, DE 193 at 48-49.) Nevertheless, as State Farm correctly explains, "Settlement of some State Court Actions is not a concession . . . that Defendants' services are proper."   (DE 123 at 30 n.7.)   In reply, the Universal Defendants' acknowledge that "the settlement agreements do not contain releases," and explain that their argument is not based on having "been released from any alleged liability by the settlement agreement."   (DE 138 at 25-26.)   Accordingly, it is clear that the Universal Defendants have not alleged a breach of duty *under the state court settlement agreements*, and Count II should be dismissed.[3]

---

[3] To be sure, the Universal Defendants rely upon a case which instructs that,

Finally, nothing here prevents the Universal Defendants from asserting a related, affirmative defense, such as payment or accord and satisfaction.   In fact, the Universal Defendants' affirmative defenses already assert that "Plaintiff's claims must be dismissed in whole or part to the extent that the transactions, events, and claims for payment were the subject of a prior compromise, settlement, or release." (DE 116 at 32 ¶ 25.)   They are not precluded from getting to the same place defensively, rather than offensively.

---

"[g]enerally, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."   *Wedding Belles v. SBC Ameritech Corp.*, No. 250103, 2005 WL 292270, at *1 (Mich. Ct. App. Feb. 8, 2005) (quotations and citations omitted).   However, as noted above, the Universal Defendants concede that they received payment under the state court settlement agreements, and Plaintiff State Farm has clarified that it is not here seeking to recoup any such payments.   Moreover, "[t]he covenant of good faith and fair dealing . . . cannot be employed, in interpreting a contract, to override express contract terms."   *Stephenson v. Allstate Ins. Co.*, 141 F. Supp. 2d 784, 790 (E.D. Mich. 2001) (quotations and citation omitted).   "It does not provide the basis for a cause of action independent of a valid existing contract."   *Van Arnem Co. v. Manufacturers Hanover Leasing Corp.*, 776 F. Supp. 1220, 1223 (E.D. Mich. 1991) (citation omitted).   "The implied covenant of good faith and fair dealing essentially serves to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms."   *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 876–877 (5th Cir. 1989).   The Universal Defendants have not pleaded a breach of an implied covenant of good faith and fair dealing, and Michigan courts have been reluctant to permit such a tort-based cause of action in the first party insurance context.   *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 420, 423, 295 N.W.2d 50 (1980) (in a case arising from an insurer's refusal to pay on a disability insurance policy).

### c.   Count III - Fraudulent Misrepresentation

The Universal Defendants' counterclaim generally describes "State Farm's illegitimate and unlawful use of the automated TIN [taxpayer identification number] processes and fraudulent 'investigation' letters."   (DE 116 at 44-49 ¶ 40-56; *see also* DE 138 at 13-14.)   Thereafter, they specifically allege a counterclaim of fraudulent misrepresentation.   (DE 116 at 57-60 ¶¶ 99-117.)   Within this counterclaim, the Universal Defendants assert that, "State Farm's representation that certain claims were denied because the services provided were not reasonably necessary was false when made because State Farm actually denied payment because of a Project, TIN Diversion, or TIN Stop[,]" and "[a]s indicated by the documents attached at Exhibit 3 [DE 116-4, DE 119], all of the claims submitted by the Universal Defendants since 2012 were subject to the unlawful TIN processes, meaning that State Farm, using its own fraudulent protocol, denied all such claims before the letters were sent to the Universal Defendants."   (DE 116 at 59 ¶¶ 108, 111.)

"To plead a fraud claim under Michigan law, a plaintiff must allege that:   (1) the defendant made a material representation; (2) the representation was false; (3) at the time the representation was made, it was either known to be false, or made recklessly without any knowledge of its truth; (4) the representation was made with

16

the intention that it should be acted on by plaintiff; (5) plaintiff, in fact, acted in reliance on it; and (6) plaintiff suffered damages as a result." *Little Caesar Enterprises, Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000). Moreover, "Fed.R.Civ.P. 9(b) requires that a plaintiff alleging fraud 'must state with particularity the circumstances constituting fraud.'" *Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 427 (6th Cir. 2014).

The Court should conclude that the Universal Defendants' fraudulent misrepresentation counterclaim survives a Fed. R. Civ. P. 12(b)(6) challenge. First, to the extent Plaintiff argues that this counterclaim does not satisfy "Rule 9(b)'s heightened pleading requirements[,]" (DE 123 at 33-34, DE 139 at 12-13), I need look no farther than Judge Roberts's February 23, 2016 order denying State Farm's motion to dismiss Summit Medical Group PLLC's counterclaim for fraud / fraudulent misrepresentation, which concluded that "Summit's allegations of fraud are sufficiently pled." (DE 65 at 2-3.) This is significant, because SMG's October 29, 2015 counterclaim for fraud / fraudulent misrepresentation is strikingly similar to the Universal Defendants' July 22, 2016 counterclaim for fraudulent misrepresentation. (*Compare* DE 45 ¶¶ 99-122, DE 116 ¶¶ 99-117.) Relatedly, Judge Roberts's June 8, 2016 order denied State Farm's February 23, 2016 motion for reconsideration (DE 104, DE 66), which motion had been based upon *State Farm*

*Mut. Auto. Ins. Co. v. Radden*, No. 14-13299, 2016 WL 695598 (E.D. Mich. Feb. 22,

2016) (O'Meara, J.) (opinion granting State Farm's motion to dismiss counterclaim)

– a case upon which State Farm heavily relies in its effort to defeat this counterclaim.

Second, to the extent State Farm is arguing that the Universal Defendants "do

not allege a breach of duty separate and distinct from a breach of contract[,]" (DE

123 at 32-33), the rules permit "inconsistent claims or defenses." Fed. R. Civ.

8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless

of consistency."). Here, the Universal Defendants explain that "the use of the TIN

processes and fraudulent investigation letters implicate separate and distinct duties,

facts, injuries, and motivations, compared to a simple failure or refusal by State

Farm to abide by its statutory duty to pay no-fault benefits." (DE 138 at 30.) They

further distinguish the fraud claim from the no-fault claim by "the specific nature of

the damages the Universal Defendants incurred as a result of State Farm's fraud."

(DE 138 at 31.)

### d.    Count IV - Abuse of Process

Within the "general allegations" of their counterclaim, the Universal

Defendants set forth several paragraphs describing "State Farm's abuse of the

*discovery procedures* in this case." (DE 116 at 49-54 ¶¶ 57-83 (emphasis added).)

The Universal Defendants' counterclaim for "abuse of process" is based upon State

Farm's filing of the instant lawsuit and certain of its discovery efforts, specifically

State Farm's alleged:   **(i)** retaliatory filing of this lawsuit; **(ii)** wrongful use of

document production and disclosure of thousands of pages of personal health

information (PHI) relating to over 500 individuals; and, **(iii)** unlawful attempt to

obtain discovery from the Universal Defendants' Alternative Administrator (Inneya

"Anna" Bazzi).   (*See* DE 116 at 60-62 ¶¶ 118-124; *see also* DE 138 at 15-17,

22-25.)

"To recover upon a theory of abuse of process, a plaintiff must plead and

prove (1) an ulterior purpose and (2) an act in the use of process which is improper in

the regular prosecution of the proceeding."   *Friedman v. Dozorc*, 412 Mich. 1, 30,

312 N.W.2d 585, 594 (1981) (citing *Spear v. Pendill*, 164 Mich. 620, 623, 130 N.W.

343 (1911)).   As this Court has further explained:

> For an abuse-of-process claim, the misconduct "is not the wrongful
> procurement of legal process or the wrongful initiation of criminal or
> civil proceedings; it is the misuse of process, no matter how properly
> obtained, for any purpose other than that which it was designed to
> accomplish." [*Friedman*, 412 Mich. at 30, 312 N.W.2d at 594] at n. 18
> (quoting Restatement (Second) of Torts § 682 cmt. a (1977)).   An
> "action for the abuse of process lies for the improper use of *process
> after it has been issued*, not for maliciously causing it to issue." *Spear
> v. Pendill,* 164 Mich. 620, 623, 130 N.W. 343, 344 (1911) (quotation
> marks omitted).

*Curran v. City of Dearborn*, 957 F.Supp.2d 877, 887 (E.D. Mich. 2013) (emphasis

added).

For the reasons which follow, the Court should dismiss Count IV, as none of the alleged bases for this counterclaim state a claim upon which relief may be granted.

### i.   Initiation of the Lawsuit

First, as for the claim that "State Farm did not initiate this litigation because it believes or has evidence that the Universal Defendants engaged in insurance fraud[,]" but, instead, "brought this lawsuit for the *ulterior and covert purpose* of bankrupting the Universal Defendants and of carrying out the final step in its retaliatory scheme against Abulabon[,]" (DE 116 at 61 ¶ 120 (emphasis added)), "[a] complaint must allege more than the mere issuance of the process, because an 'action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue.'"   *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 322 (2010) (quoting *Friedman,* 412 Mich. at 31, 312 N.W.2d 585 (quotation marks and citation omitted)).   Moreover, "the ulterior purpose alleged must be more than harassment, defamation, exposure to excessive litigation costs, or even coercion to discontinue business."   *Early Detection Ctr., P.C., v. N.Y. Life Ins. Co.*, 157 Mich. App. 618, 629–30, 403 N.W.2d 830, 835 (1986) (citing *Young v. Motor City Apartments Ltd. Dividend Housing Ass'n No. 1 and No. 2*, 133 Mich. App. 671, 682-683, 350 N.W.2d 790 (1984)); *see also Horacek v. Neph*, 466 F.

App'x 508, 511 (6th Cir. 2012) ("Neph's retaliatory motive for giving false testimony is insufficient to sustain a claim of abuse of process."). Finally, State Farm's argument that its filing of the instant lawsuit is protected by the First Amendment is persuasive. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972) ("it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a -vis their competitors."); *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 57 (1993) ("an objectively reasonable effort to litigate cannot be sham regardless of subjective intent."); *Westmac, Inc. v. Smith*, 797 F.2d 313, 317 (6th Cir. 1986) ("the sham exception does not apply merely because a party files a suit with the principle purpose of harming his competitor."); *GMA Cover Corp. v. Saab Barracuda LLC*, No. 4:10-CV-12060, 2012 WL 642739, at *14 (E.D. Mich. Feb. 8, 2012) (Komives, M.J.) ("to the extent GMA basis its tortious interference claim on SBLLC's alleged filing of baseless complaints with regulatory agencies, the claim fails under the *Noerr–Pennington* doctrine."), *report and recommendation adopted*, No. 10-CV-12060, 2012 WL 639528 (E.D. Mich. Feb. 28, 2012) (Goldsmith, J.).

## ii.    Discovery tactics

As for the claim that "State Farm has abused the actual processes of this

Court, specifically by its *wrongful use of its document production* for the purpose of

causing the Universal Defendants to waste substantial resources on the review of

hundreds of thousands of 'extraneous' documents and by *disclosing thousands of*

*pages of [personal health information] PHI relating to over 500 individuals*, thereby

forcing the Universal Defendants to take on additional liability as the involuntary

custodian of State Farm's PHI[,]" (DE 116 at 61 ¶ 121), I note Judge Roberts's

September 26, 2016 order, wherein the Court concluded that "State Farm's

document production has not unlawfully violated HIPPA."   (DE 89, DE 122).   I

questioned defense counsel about this during the February 27, 2017 hearing, and, in

response, he withdrew this portion of the counterclaim.   (DE 193 at 77-78, 80-81.)

What is less clear is whether the Universal Defendants are likewise

withdrawing their claim that State Farm's alleged "document dump" in this case can

provide a basis for an abuse of process claim.   (DE 116 at 61 ¶ 121.)   I note that this

claim was asserted two months before Judge Roberts definitively ruled that "State

Farm . . . has no further duty to sort or organize the documents."   (DE 122 at 3-4.)

An action taken in the course of discovery which has already received judicial

approval or exoneration in this very case can hardly form the basis of an abuse of

process claim here or elsewhere. Moreover, as State Farm points out, a document production pursuant to Rules 34 and 26 is not conduct that can support an abuse of process claim. *See PPG Industries, Inc. v. Payne*, No. 3:10–CV–73, 2012 WL 1836314, at *11 (E.D. Tenn. May 21, 2012) (granting summary judgment on an abuse of process claim, which was based in part upon "alleged excessive litigation tactics," where litigation was "contentious" and there was a "document dump[.]"). As occurred here, document productions are properly resolved through discovery motions. *Westfield Ins. Co. v. Mitchell*, No. 2:12–cv–00585, 2013 WL 4742832, at *5 (S.D. W. Va. Sept. 3, 2013) (alleged intentional failure to produce documents under Rule 26(a)(1) "would not be sufficient to support an abuse of process claim[;]" at most it would "suggest a violation of civil discovery rules.") (quotations and citation omitted); *see also, Flores v. Emerich & Fike*, No. 1:05-CV-0291 AWI DLB, 2008 WL 2489900, at *13 (E.D. Cal. June 18, 2008) ( "alleged involvement in the destruction of evidence" not an abuse of process because "inherently part of the discovery process" and would be "redressible under discovery rules . . . ."). Further, and as I noted from the bench, this is why the court rules provide means for seeking a protective order; otherwise, every perceived instance of discovery abuse would generate an additional lawsuit for abuse of process, and every lawsuit would potentially generate ten more, *ad infinitum,* along the lines of *The Sorcerer's*

23

*Apprentice.*   This certainly cannot be.   Any such claim or theory should be rejected by this Court.[4]

### iii.   Phone Call to Defendant's Employee

With respect to the claim that "State Farm committed an additional abuse of the actual discovery processes of this Court when it unlawfully attempted to obtain discovery from the Universal Defendants' Alternative Administrator[,]" (DE 116 at 61 ¶ 122), Defendants have not provided any authority in response to Plaintiff's assertion that "a telephone call does not constitute the use of process and cannot support an abuse-of-process claim."   (DE 123 at 23-24, DE 138 at 25, DE 139 at 9-10.)   *See Larobina v. McDonald*, 274 Conn. 394, 406–07, 876 A.2d 522, 530 (2005) (after surveying several cases, the Court observed that "although the definition of process may be broad enough to cover a wide range of judicial procedures, to prevail on an abuse of process claim, the plaintiff must establish that the defendant used a *judicial process* for an *improper purpose*.") (emphases added);

---

[4] I take notice, *sua sponte*, of the Michigan Court of Appeals recent opinion in *Lawrence v. Burdi*, 314 Mich. App. 203, 886 N.W.2d 748 (2016), in which the court permitted an abuse of process claim to be premised upon the malicious filing of requests to admit which had no purpose other than to cause embarrassment to a party.   While there is debate about whether requests to admit technically serve as a tool of discovery, they are a very different beast from a *production of documents* in form, and are also distinct under state court procedure because they are filed in the public record as a matter of course.   MCR 2.311(F).   They are not even closely analogous to a "document dump."

*Ioppolo v. Rumana*, No. CIV.A. 06-193-JJB, 2011 WL 3568863, at *5 (M.D. La. Aug. 15, 2011) (dismissing an abuse of process claim where Plaintiff did not allege that "Defendants utilized legal process, or even court process."), *aff'd*, 581 F. App'x 321 (5th Cir. 2014).   I agree that the phone call in question cannot constitute an *abuse* of process because it does not entail even a *use* of *process*.   As defined by *Black's Law Dictionary* (9th Ed.), at 11, an abuse of process requires the "improper and tortious use of a legitimately issued *court process*…."   (Emphasis added).   If anything is clear, as long ago noted by Professor Prosser, "the judicial process must somehow be involved."   *Prosser and Keeton on Torts* (5th Ed.), §121, at 898.   This is why a repairman's notice of lien or a threat that process will be invoked does not satisfy the "process" element of the tort, which requires something more formal like attachment, execution, garnishment, arrest, or sequestration proceedings.   *Id*. at 899.   As the Michigan Supreme Court noted in *Spear,* "[a]buse of process is the wrongful use of the process *of a court*."   164 Mich. at 623 (emphasis added).   An "action for the abuse of process lies for the improper use of process *after it has been issued* . . . ."   *Id.* (quotations and citations omitted) (emphasis added).   A phone call to a potential witness is, at most, a tool of "informal discovery," which can be performed with or without a pending lawsuit and certainly without any assistance from the Court.   While making a phone call to an employee of an opponent during a

25

lawsuit may (or may not) constitute an ethical violation – depending upon whether the contact was inadvertent[5] and upon the level of the employee's authority – it does not involve process, and, thus, cannot form the basis of an abuse of process claim.[6]

### e.  Count V - Tortious Interference with Contractual Relations

The Universal Defendants' final counterclaim is "tortious interference with contractual relations."   (DE 116 at 62-63 ¶¶ 125-133.)   The contractual relations upon which this counterclaim is based are the Universal Defendants' entry into and maintenance of "many contracts and business relationships with various patients for physical therapy services at the Universal Defendants' facilities."   (DE 116 at 62 ¶ 127.)   Among other things, it is alleged that:

> State Farm intentionally interfered with the Universal Defendants' contractual relationships by using false allegations to disparage the Universal Defendants and by abusing the processes of this Court for the purpose of retaliation and forcing the Universal Defendants into bankruptcy.   Such actions deceived the Universal Defendants' current and potential patients and the surrounding community into believing that the Universal Defendants are not a legitimate physical therapy clinic.

---

[5] I note that Plaintiff State Farm's characterization of this telephone contact as "inadvertent" and "*de minimus*" is supported by Plaintiff's counsel's June 29, 2016 email to defense counsel, which explains, "[w]e did not know that Anna Bazzi is a current employee of PhysioFlex[,]" and "[t]here was no substantive discussion between T.R. and Ms. Bazzi."   (DE 123 at 23, DE 123-4 at 2).

[6] If the Court agrees with these conclusions, then it need not address State Farm's argument that the Universal Defendants "did not allege damages as a result of SFMAIC's purported abuse of process."   (DE 139 at 11.)

(DE 116 at 62-63 ¶ 130.)   The Universal Defendants further allege that, "[a]s a direct and proximate result of State Farm's conduct, [they] have lost a substantial portion of their patient base and corresponding contract with such patients."   (DE 116 at 63 ¶ 131.)

At the outset, I note that "[i]n Michigan, *tortious interference with a contract or contractual relations* is a cause of action distinct from *tortious interference with a business relationship or expectancy*."   *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 89, 706 N.W.2d 843, 848 (2005) (citations omitted) (emphases added); *see also Glob. Fleet Sales, LLC v. Delunas*, 203 F. Supp. 3d 789 (E.D. Mich. 2016) (Michelson, J.).   Here, the Universal Defendants attempt to plead the former, titling the counterclaim "Tortious Interference with Contractual Relations" and referring repeatedly to their "contractual relations" and "contracts" within the body of the count, specifically alleging that they "*entered into* and maintained many contracts and business relationships . . . ."   (DE 116 at 62 ¶ 127 (emphasis added); *see also*, *e.g.*, DE 116 at 62-63 ¶¶ 126-127, 129-131.)[7]   As this Court has recently explained:

---

[7] By contrast, "[t]o prevail on a tortious interference with economic advantage claim (*i.e.* business relationship or expectancy),

[Defendant] must establish that: "(1) the existence of a valid business

The elements of tortious interference with a contract under Michigan
law are:   "(1) the existence of a contract, (2) a breach of the contract,
and (3) an unjustified instigation of the breach by the defendant."
*Bailey v. Scoutware, LLC*, 2012 WL 2711458, at *7 (E.D. Mich. July 9,
2012) (quoting *Health Call of Detroit*, 268 Mich. App. at 89-90).
"Tortious interference with contract exists when a third party to a
contract, knowing of the contract, intentionally and wrongfully induces
a breach of the contract which results in damage to a non-breaching
party."   *Fidelity Nat. Title Ins. Co. v. Title First Agency, Inc.*, 2008 WL
4371838, at *7 (E.D. Mich. Sept. 22, 2008) (citing *Mino v. Clio School
District*, 255 Mich. App. 60, 78 (2003)).

*Scrappost, LLC v. Peony Online, Inc.,* No. 14-14761, 2017 WL 697028, at *4 (E.D.

Mich. Feb. 22, 2017) (Cox, J.).

In their response brief, the Universal Defendants describe "State Farm's

tortious interference with the Universal Defendants' business[.]"   (DE 138 at 17.)

They defend this counterclaim, explaining that Plaintiff State Farm's conduct "has

decimated Defendants' practice."   (DE 138 at 25.)   Nonetheless, for the reasons set

forth by Plaintiff in its motion, the Court should conclude that the Universal

---

relationship or expectancy that is not necessarily predicated on an
enforceable contract, (2) knowledge of the relationship or expectancy
on the part of the defendant interferer, (3) an intentional inference by
the defendant inducing or causing a breach or termination of the
relationship or expectancy, and (4) resulting damage to the party whose
relationship or expectancy was disrupted." *Health Call of Detroit v.
Atrium Home & Health Care Services, Inc.*, 268 Mich. App. 83, 89-90
(Mich. Ct. App. 2005) (internal citations omitted).

*Scrappost, LLC v. Peony Online, Inc.,* No. 14-14761, 2017 WL 697028, at *6 (E.D.
Mich. Feb. 22, 2017).

Defendants' counterclaim of "tortious interference with contractual relations" does not state a claim upon which relief may be granted.

First, although the Universal Defendants base this counterclaim upon "contracts and business relationships with various patients . . . [,]" (*see*, *e.g.*, DE 116 ¶¶ 127, 131), and while they "are prepared to name specific providers and patients in camera[,]" (DE 138 at 25), they have not alleged "the existence of a contract" with the requisite specificity.   *See, i.e., Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 754 (6th Cir. 2014) ("Thompson's complaints merely assert that a contract exists. She does not identify the contract or make any argument that an implied contract was formed.   While she argues to this court that an implied-in-fact contract existed, she failed to adequately plead this theory to the district court."); *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284, at *8 (E.D. Mich. Feb. 12, 2013) ("The Clinics have not . . . identified any specific patient relationship adversely affected, or patients that they turned away because they held State Farm policies."), *on reconsideration*, No. 12-11500, 2013 WL 3777108 (E.D. Mich. May 22, 2013).   When asked at oral argument how State Farm is supposed to defend against this counterclaim if the contracts are not identified, the Universal Defendants' attorney conceded that he would need leave to "flesh that out."   (DE 193 at 83.)

Second, even if the Universal Defendants could identify specific contracts, as they offer to do *in camera* for privacy reasons (*see* DE 138 at 17 n.4), their counterclaim does not allege that their patients breached any such contracts.   *See Morris v. Ambassador Nursing Home, Inc.*, 845 F. Supp. 1164, 1167 (E.D. Mich. 1994) ("In Michigan, because a plaintiff must show that the tortfeasor's interference induced a breach, breach of contract is an essential element of a tortious interference claim.") (citing *Northern Plumbing & Heating, Inc. v. Henderson Bros., Inc.,* 83 Mich.App. 84, 93, 268 N.W.2d 296 (1978)); *Thill v. Ocwen Loan Servicing, LLC*, 8 F. Supp. 3d 950, 955 (E.D. Mich. 2014) ("Plaintiff's allegations do not identify the specific terms of the contract allegedly breached—such as identifying 'what payments were made, when or how they were supposed to be credited, what mistakes were made, why they are considered mistakes under the contract, etc.'") (quoting *Anderson v. Bank of America,* 2013 WL 5770507, at *4 (E.D.Mich. Oct. 24, 2013) (Cohn, J.)).   In fact, the word "breach" does not appear within this counterclaim.   (*See* DE 116 at 62-63 ¶¶ 125-133.)   As State Farm's counsel argued during the hearing, "[t]he physician/patient relationship is terminable at will, so the loss of any patients would not equate to a breach of contract by patients."   (DE 193 at 46.)   The Universal Defendants do not dispute this.   (DE 193 at 83.)   Nor do I.

Third, the Universal Defendants have not successfully alleged that State Farm

30

committed tortious conduct.   To state a claim for tortious interference with contractual relations, "'[a] plaintiff must allege the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights.'"   *Thill*, 8 F.Supp.3d at 955 (quoting *Liberty Heating & Cooling, Inc. v. Builders Square, Inc.,* 788 F.Supp. 1438, 1447 (E.D.Mich.1992) (Edmunds, J.) (citation and emphasis omitted)).   To be sure, the Universal Defendants respond that State Farm's "tortious conduct" is its "abuse of process."   (DE 138 at 25; *see also* DE 138 at 17.)   However, for the reasons stated above, the "abuse of process" counterclaim fails to survive this motion to dismiss.   *See Early Detection Ctr., P.C.,* 157 Mich. App. at 631, 403 N.W.2d at 836 (failure to state a claim on an "intentional interference with a business relationship," stating "[t]here is nothing illegal, unethical or fraudulent in filing a lawsuit, whether groundless or not.").

### 3. Any prejudice resulting from the timing of the counterclaims' filing can be cured by an extension of the fact discovery deadline.

Plaintiff State Farm argues that the delay resulting from the tardily filed counterclaim is "unduly prejudicial."   (*See* DE 123 at 18-20; *see also* DE 139 at 7-8.)   On the other hand, the Universal Defendants argue that "there was no undue delay and State Farm cannot show undue prejudice."   DE 138 at 20-21.

31

Preliminarily, having already concluded that they were timely, any prejudice resulting from the filing of the Universal Defendants' counterclaims can be cured by an extension of the fact discovery deadline.   I note that nothing precluded State Farm from conducting discovery with respect to these counterclaims between July 22, 2016 and the December 2016 discovery cutoff, some of which are similar to counterclaims filed by Defendant SMG in 2015.   Furthermore, during the February 27, 2017 hearing, State Farm's counsel explained that the case was stayed for approximately one month (August 2016 – September 2016) and that between September 2016 and December 2016, "the parties completed fact discovery with the exception of a few outstanding issues and there was not sufficient time to take discovery on these five brand new causes of action . . . ."   (DE 193 at 36-37.)   She further expressed that there might be "a little bit" of "overlap with the evidence that would relate to the counterclaims[.]"   (DE 193 at 37.)   In particular, State Farm's counsel stated that her client would probably need about 4 months to conduct additional discovery if all of the counterclaims were permitted to go forward and further stated that Plaintiff would need probably only two months if just the "unpaid PIP benefits" counterclaim were to go forward.   (DE 193 at 40, 57.)   Accordingly, any prejudice resulting from the timing of the counterclaims' filing can be cured by an extension of the fact discovery deadline, proportionate to the number of

counterclaims that survive the instant motion to dismiss.   I suggest three additional months.

### 4.     Conclusion

In sum, the Court should:   **(a)** conclude that the Universal Defendants' July 22, 2016 filing is timely; **(b)** conclude that the "unpaid PIP benefits" and "fraudulent misrepresentation" counterclaims survive dismissal, while the "breach of settlement/release agreements," "abuse of process" and "tortious interference with contractual relations" counterclaims do not; and **(c)** if the Court agrees with these recommendations, enter an order providing for a brief fact discovery period which, except as otherwise ordered by this Court, would not open discovery generally but would only relate to the surviving counterclaims.

## III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).   Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to

this Report and Recommendation.   *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).   Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.   Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.   Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.   Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).   The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.   If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: March 30, 2017                    s/Anthony P. Patti
                                         Anthony P. Patti
                                         UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 30, 2017, electronically and/or by U.S. Mail.

                                         s/Michael Williams
                                         Case Manager for the
                                         Honorable Anthony P. Patti